**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CHARLES H. DISE,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 08-0127-WS-C** |
| ) | |
| **EXPRESS MARINE, INC.,** ) | |
|     **Defendant/Third-Party Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JUVONDA SHUNTA HODGE, M.D.,** ) | |
|  *et al.,* ) | |
|     **Third-Party Defendants.** ) | |

**ORDER**

    This matter comes before the Court on defendant/third-party plaintiff Express Marine, Inc.'s Motion for Temporary Stay of Third-Party Proceedings (doc. 48).  The Motion has been briefed and is ripe for disposition at this time.

**I.    Procedural History.**

    On July 17, 2007, plaintiff Charles H. Dise filed a Complaint against defendant Express Marine, Inc. in the U.S. District Court for the District of Maryland.  In that Complaint, Dise alleged that he sustained injuries on July 19, 2005 while operating the tugboat M/V BALTIMORE in the waters of Mobile River when the tug allided with a railroad bridge abutment, ejecting Dise into the river and causing him certain injuries.[1]  Dise sued Express Marine (which was alleged to be his employer and the owner of the tug) on various theories, including Jones Act negligence, unseaworthiness of the vessel, vicarious liability for negligent provision of medical care, maintenance and cure, and wages to the end of the voyage.

    The Complaint alleged that, in the immediate aftermath of the allision, Dise was treated

---

[1]    Even though the accident happened in the Southern District of Alabama, Dise filed the Complaint in the District of Maryland, presumably because he is a resident citizen of that judicial district and Express Marine is based in New Jersey, such that a Maryland venue is more convenient for both sides than an Alabama venue would be.

at the "University of South Alabama Hospital" by "Dr. Juvonda Hodge" and a "Dr. Frotan" for a deep wound to his left leg before being released to fly home to Maryland several days later. Although neither the hospital nor any physicians were named as defendants, the Complaint was sharply critical of the medical treatment Dise received in Alabama, suggesting that his leg had been improperly sewn up, resulting in the following vividly-described injuries: "the skin had turned black and green; his leg was entirely inflamed up to his upper thigh, and big pockets of flesh eaten out of the area." (Complaint, ¶ 10.) According to the Complaint, the infection was so severe that Dise nearly lost his leg and could have lost his life. As a result of these injuries, plaintiff seeks to hold Express Marine liable for damages in the amount of $2.5 million.

On October 12, 2007, Express Marine filed a Third-Party Complaint (doc. 6) against Juvonda Shunta Hodge, M.D., and Amin Frotan, M.D., pursuant to Rule 14(c), Fed.R.Civ.P. According to the Third-Party Complaint, Drs. Hodge and Frotan are physicians affiliated with the University of South Alabama Medical Center ("USA Medical Center").[2] In relevant part, the Third-Party Complaint alleges that any damages and injuries of which Dise is complaining "were caused by the primary and active negligence of ... Juvondas S. Hodge, M.D. [and] Amin Frotan, M.D." and that "[i]f Express Marine, Inc., is held liable to Plaintiff Dise, then Express Marine, Inc. is entitled to indemnity or contribution from ... Juvondas S. Hodge, M.D. [and] Amin Frotan, M.D." (Doc. 6, ¶¶ 13, 14.)[3] After Drs. Hodge and Frotan moved to dismiss the third-party claims for lack of personal jurisdiction, among other grounds, U.S. District Judge Blake of the District of Maryland transferred venue of all third-party claims to this District Court on January 29, 2008. Judge Blake retained the primary action (*i.e.*, Dise's claims against Express Marine, and Express Marine's counterclaims against Dise), such that <u>only</u> the third-party claims

---

[2] USA Medical Center was also named as a third-party defendant; however, Express Marine subsequently consented to the dismissal without prejudice of all claims against that entity. (*See* doc. 45.) Accordingly, there are no pending claims against USA Medical Center, and that entity is not a party to these proceedings.

[3] The operative iteration of the third-party pleading is Express Marine's First Amended Third-Party Complaint (doc. 47), which reflects *inter alia* that the third-party claims are pleaded pursuant to Rules 14(a) and/or 14(c), Fed.R.Civ.P., and that jurisdiction is proper pursuant to one or more of 28 U.S.C. § 1333, 28 U.S.C. § 1332, and 28 U.S.C. § 1367.

were transferred here.

The result of this atypical sequence of events is that the *Dise* action has been fractured into two distinct but interrelated pieces that are pending in two different federal courts. All claims concerning Dise's right (if any) to recover from Express Marine remain pending in the District of Maryland. The issue of Express Marine's liability to Dise (or, for that matter, Dise's liability to Express Marine on the counterclaims) has not been presented to this Court and will not be decided in this judicial district. Rather, the sole issue pending in this District Court is whether Express Marine has a right of contribution or indemnity against Drs. Hodge and Frotan <u>if</u> Express Marine is found liable to Dise in the Maryland proceedings.

## II.     Analysis of Motion to Stay.

Armed with that procedural background, and cognizant of the unusual posture of this action, the Court now turns to the Motion to Stay. Express Marine's position is that these third-party proceedings should be stayed pending the outcome of the Maryland proceedings on grounds of efficiency and conservation of judicial resources. Unless and until the federal court in Maryland has found Express Marine liable to Dise in those underlying proceedings, Express Marine reasons, its claims for indemnity and contribution from Drs. Hodge and Frotan are contingent and need not be litigated. If the Maryland proceedings are resolved in Express Marine's favor, then the third-party claims in this action would necessarily be rendered moot and this cause could be dismissed. For their part, Drs. Hodge and Frotan oppose the Motion to Stay, arguing that rather than simply staying these proceedings, the Court should dismiss them without prejudice.[4]

"The District Court has broad discretion to stay proceedings as an incident to its power to

---

[4]      In that regard, Drs. Hodge and Frotan have also filed a Motion to Dismiss (doc. 52) seeking dismissal of the First Amended Third-Party Complaint for the following reasons: lack of subject-matter jurisdiction, expiration of the applicable statute of limitations, lack of a contractual relationship, prematurity of claims, and failure to comply with pleading requirements of Alabama Code § 6-5-551. Based on the Court's preliminary review of the parties' briefs on the Motion to Dismiss, it appears that, whatever merit the third-party claims may or may not have, federal subject-matter jurisdiction is proper under, at a minimum, 28 U.S.C. § 1332. It has been pleaded (and the third-party defendants have not disputed) that Express Marine is of diverse citizenship to Drs. Hodge and Frotan, and that the amount in controversy is far in excess of the jurisdictional threshold.

control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Dominguez v. Hartford Financial Services Group, Inc.*, 530 F. Supp.2d 902, 905 (S.D. Tex. 2008) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation ...."); *Utah v. Eli Lilly and Co.*, 509 F. Supp.2d 1016, 1019 (D. Utah 2007) (recognizing discretion to stay pending proceedings to save time and effort for parties and the court).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).  Thus, in determining whether a stay is appropriate in a particular case, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Feld Entertainment, Inc. v. A.S.P.C.A.*, 523 F. Supp.2d 1, 3 (D.D.C. 2007) (citations omitted).

If this action is not stayed, the Court will be obliged to wade into the multi-issue quagmire of the Motion to Dismiss, which has been the subject of extensive briefing.  Furthermore, if that Motion to Dismiss is denied or if repleading is ordered, the parties will incur additional expense with respect to redrafting pleadings and/or engaging in discovery.  Such an expenditure of litigant and judicial resources would prove to be an entirely hollow, academic exercise unless Dise prevails against Express Marine in the Maryland proceedings.[5]  Thus, there are sound practical reasons for waiting to determine whether an adverse judgment is entered against Express Marine in the Maryland litigation before entertaining the question of whether Express Marine is entitled to indemnity or contribution from Drs. Hodge and Frotan in this action.  Stated another way, the dispute between these parties being entirely contingent on another event that may or may not occur, there are obvious prudential benefits to avoiding expenditure of resources on this proceeding unless and until that contingency comes to pass.

That said, the stay inquiry cannot begin and end with a determination of the most

---

[5]     Of course, the undersigned expresses no opinion as to the likely outcome of the Maryland litigation and makes no pretense of hypothesizing as to the ultimate adjudication of those proceedings.

efficient or expedient outcome, but must also examine the relative prejudice and hardship worked on each party if a stay is or is not granted.  *See Tomco Equipment Co. v. Southeastern Agri-Systems, Inc.*, --- F. Supp.2d ----, 2008 WL 489005, *3 (N.D. Ga. Feb. 19, 2008) (factors to be considered include whether granting a stay would unduly prejudice or present tactical disadvantage to nonmovant).  "[I]f there is even a fair possibility that the stay ... will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity."  *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Landis*, 299 U.S. at 255).  Thus, it is appropriate to consider the competing interests of the parties, and particularly the likelihood and severity of any prejudice to one side or the other if a stay is or is not entered.  *See, e.g., Dimensional Music Publishing, LLC v. Kersey ex rel. Estate of Kersey*, 448 F. Supp.2d 643, 655 (E.D. Pa. 2006) ("In determining whether to stay an action, a court must weigh the competing interests of the parties, as well as the possibility that a stay would harm one of the parties.").

In an effort to show harm, Drs. Hodge and Frotan allege the following forms of prejudice if this action is stayed: "These physicians will have to report the pendency of this case each time they renew their licenses, and each time they apply to renew their privileges.  If they should change their work place in the interim or need to apply for privileges at some other hospital, they would be required by law to report the pendency of this case."  (Doc. 54, at 2-3.)  Of course, these alleged forms of prejudice will exist whether this case is stayed or allowed to proceed.  Either way, it is a pending case, and these reporting obligations will attach.  Thus, it appears that Drs. Hodge and Frotan are alleging prejudice that is not unique to a stay, but is an inevitable byproduct of their having been sued.[6]  More fundamentally, they have not shown how this benign reporting obligation will visit any material detriment upon them.  They have not alleged that the reporting obligation will be time-consuming, that reporting the pendency of this action

---

[6]      In this regard, the nonmovants have presented a false dichotomy.  The choice is not between a stay and a dismissal; rather, the choice is between a stay and proceeding with the litigation (including their Motion to Dismiss, which may or may not have merit).  Thus, while the third-party defendants assume that this case will be dismissed if it is not stayed, the Court is not so sanguine.  Certainly, Express Marine's claims do not appear frivolous, nor is there any glaring jurisdictional infirmity.

might reasonably jeopardize their ability to renew licenses or privileges, or that it may impede their ability to transfer elsewhere.  For aught that Drs. Hodge and Frotan have shown, the harm to them of imposing a stay in this case will consist of nothing more than their having to list the existence of this lawsuit on forms or applications pertaining to renewal of licenses or privileges.  And, of course, they would have to list this lawsuit even in the absence of a stay, unless (as they assume) the action would otherwise be dismissed.  On this meager showing, the Court finds that the third-party defendants have failed to establish even a fair possibility that the stay sought by Express Marine would work any damage on them.

In sum, the landscape looks like this:  In the absence of a stay, scarce judicial and litigant resources will be expended on litigating these third-party proceedings that are wholly contingent on the outcome of the Maryland proceedings.  If those Maryland proceedings are resolved in a manner favorable to Express Marine, then this third-party action will be moot and the time and efforts of the parties and this Court in these proceedings will have been wasted.  By contrast, if a stay is granted, there will be no demonstrable, material prejudice worked upon any party, and no inefficient expenditure of resources to litigate a dispute that may never come to fruition.  Under the circumstances, entry of a temporary stay is both prudent and appropriate.[7]

---

[7]       The third-party defendants' other arguments can be disposed of quickly.  First, they assert that the Maryland proceedings are not confined to the negligent provision of medical care, but also embrace issues that do not involve the physicians, such as Jones Act negligence and unseaworthiness claims.  That statement is of course true, but it is also irrelevant to the stay issue.  To reiterate, Express Marine's claims in this case rest exclusively on theories of indemnity and contribution.  If Express Marine prevails in Maryland, then all of its claims in this case will vanish into thin air.  That is the reason for the stay, not any alleged overlap or identity of issues between the two sets of proceedings.  Second, Drs. Hodge and Frotan quibble with Express Marine's suggestion that it is likely to prevail in the Maryland action.  But this Court's ruling is not predicated on any forecast of the outcome of the Maryland proceedings.  Surely there is at least a possibility that Express Marine will be vindicated in Maryland.  If that happens, these third-party proceedings will be moot, and any resources expended here in the interim will have been needlessly frittered away.  Third, to the extent that third-party defendants suggest that the third-party claims against them are improper, the text of Rule 14(a), Fed.R.Civ.P., undermines their position.  That rule provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Rule 14(a), Fed.R.Civ.P.  That is precisely what Express Marine did in this case.  The fact that the Maryland court elected to sever and transfer the third-party claims from the principal claims in no way defeats the propriety of Express Marine's third-party

**III.     Conclusion.**

For all of the foregoing reasons, Express Marine's Motion for Temporary Stay (doc. 48) is **granted**, and these proceedings are **stayed** pending the resolution of the Maryland proceedings styled *Charles H. Dise v. Express Marine, Inc.*  That said, the Court will not authorize an indefinite, unfettered stay, but will instead monitor the Maryland proceedings closely to ensure that this stay remains in place no longer than necessary.  In that regard, Express Marine is **ordered** to file monthly status reports, on or before the **third Monday of every month**, beginning in **June 2008**.  Those reports must, at a minimum, state the current posture of the Maryland litigation, including the trial setting and the pendency or resolution of any motions that might reasonably bear on the propriety of a continuing stay in this case.  Express Marine is further **ordered** to notify the Court promptly in writing upon the resolution of the Maryland proceedings, and to delineate the nature of that resolution and Express Marine's position as to its impact on these proceedings.

DONE and ORDERED this 19th day of May, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

claims or militates in favor of dismissing them as premature.